## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

FILED

'19 APR -2  A 9:32

US DISTRICT COURT
HARTFORD CT

| | |
|---|---|
| OMAR ISLAMIC CENTER, INC., ) <br> A Connecticut non-stock corporation ) <br>     Plaintiff, ) <br> ) <br> v. ) <br> ) <br> CITY OF MERIDEN, CONNECTICUT ) <br> and CITY OF MERIDEN PLANNING ) <br> COMMISSION ) <br>     Defendants. ) | **COMPLAINT** <br><br> No. 3:19cv488 MPS |

## COMPLAINT

Plaintiff, OMAR ISLAMIC CENTER, INC. (the "Center"), by and through its

undersigned counsel, complain of Defendants THE CITY OF MERIDEN, CONNECTICUT, and

THE MERIDEN PLANNING COMMISSION as follows:

### NATURE OF ACTION

1. This action is commenced by Plaintiff to redress violations of its civil rights, as protected

   by the United States Constitution and 42 U.S.C. § 1983, the Religious Land Use and

   Institutionalized Persons Act of 2000, 42 U.S.C. § 2000cc *et seq.* ("RLUIPA"), and

   Connecticut's Religious Freedom Act, § 52-571b, caused by the Defendants'

   burdensome, discriminatory and unreasonable land use regulations and intentional

   conduct that has prohibited and continues to prohibit the Omar Islamic Center ("Omar

   Center" or the "Center") from operating a mosque on a property located in Meriden,

   Connecticut.

2. Plaintiff alleges that the Planning Commission's denial of the Center's application for a

   Special Permit – which satisfied <u>all</u> applicable criteria under the zoning regulations – was

   based on misapplication of state and local laws, ad hoc factors specifically and specially

designed to prevent the establishment of a mosque within Meriden, unequal treatment as compared to similarly situated places of worship in the same area and same zoning district, and the significant presence of strong anti-Muslim prejudice within a local community at the time of the Center's application.

3. Plaintiff further alleges that the denial of the Center's application substantially burdens the Center's religious exercise without using the least restrictive means of achieving a compelling governmental interest.

4. Plaintiff also alleges that application of unwritten, ad hoc, and novel "standards" that appear nowhere in the zoning regulations by the Planning Commission to deny the Center's Special Permit constitutes a prior restraint on the Center's protected First Amendment activity does not provide reasonable notice to Special Permit applicants of whether proposed places of worship meet the standards for a Special Permit, and is therefore vague and allows for unbridled discretion on the part of the Planning Commission.

5. Plaintiff also alleges that the Meriden zoning regulations' effective requirement that any religious institution or assembly that wishes to construct a house of worship within Meriden must first undergo a highly discretionary special permit review process based on vague standards is imposed because of the religious nature and uses of a house of worship, and the regulations, on their face, constitute an unconstitutional prior restraint on both the free exercise of religion and the free expression of religious belief under the First Amendment.

## PARTIES

1. Plaintiff OMAR ISLAMIC CENTER, INC. (the "Center"), is a non-stock corporation formed under the Laws of the State of Connecticut on April 30, 2018.

2. Defendant CITY OF MERIDEN is a municipality located in New Haven in the State of Connecticut.

3. Defendant CITY of MERIDEN PLANNING COMMISSION is a planning commission organized under Chapter 124, section 8-19 of the Connecticut General Statutes. The Planning Commission consists of five members nominated by the Mayor of Meriden and approved by the City Council of the City of Meriden.

## JURISDICTION AND VENUE

4. The subject matter of this Court is founded upon 28 U.S.C. § 1331 (federal question jurisdiction) in that this action is brought under 42. U.S.C. § 1983. This court also has supplemental jurisdiction of Court VII and Court VIII under 28 U.S.C. § 1367(a) for claims brought under Connecticut statutes.

5. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) in that all of the events giving rise to the claims herein occurred in this District and the Defendants are subject to personal jurisdiction in this District as of the commencement of this action.

## FACTUAL ALLEGATIONS

The Omar Islamic Center, Inc.

6. The Omar Islamic Center, Inc. was incorporated in April 30, 2018 and currently serves about 30 Muslim families (the "Members" or "Congregants") who predominantly live in Meriden, Connecticut and Middletown, Connecticut. The Center is a welcoming religious

community dedicated to enhancing the spiritual, civic, and charitable character of Meriden.

7. The Center does not have its own mosque, which is an integral component of Muslim religious worship. Rather, the Center's Congregants must meet to worship in private without the benefit of an established place of worship where they may gather as a religious congregation.

8. There is only one other Sunni mosque within the City of Meriden.  There is a total of two mosques in other areas of the City of Meriden.

9. The existing mosques within the City of Meriden are limited to main prayer areas without additional space for religious instruction, education and programming.

10. The lack of a mosque with programming space severely burdens the religious exercise of the Center and its members. The Center's Members are hindered in their observation of several of the Five Pillars of Islam specified in the Quran, the central religious text of Islam. These 5 Pillars set forth the most important, obligatory aspects of Islamic religious life: (1) A personal declaration of faith called the *shahada*; (2) daily prayers *salah*; (3) charity, called *zakat*; (4) fasting during the holy month of Ramadan *sawm*; and, (5) a pilgrimage to Mecca, called the *hajj*. Several of these religious obligations, and other religious requirements are described below, cannot be adequately observed because the Center lacks a mosque and now has been denied by the Defendants the ability to establish one on property that is zoned for a place of worship.

11. Adult Muslims, including the Center's Congregants, are required to pray five times daily. Religious Muslims believe that these prayers should occur in a mosque.

12. The weekly congregational Islamic service occurs at mid-day on Friday. The Center lacks a mosque to hold this service.

13. Communal prayer is also essential during the month of Ramadan and on the two Muslim holy days, called Eid. The Center has no mosque in which it can observe these holy days.

14. In order to accommodate its religious exercise, the Center requires a mosque with a prayer area large enough and configured adequately to accommodate its members for prayers, regular services, holy day services, funerals, other events and for charitable giving, and an auxiliary space adequate for religious education for youth and adults, for after-school, religious and educational programs for its youth, for religiously ordained meals, for charitable activity, and space for an imam, his office and counseling space.

<u>The Subject Property</u>

15. In order to address its religious needs, in or around December 31, 2018, the Center obtained a commitment from the owner of the real property located at 999 Research Parkway in Meriden, Connecticut (the "Property") to provide the Property to the Center for the establishment of a mosque.

16. The Property had been vacant for over seventeen years in spite of the continued efforts of real estate brokers and the Meriden Economic Development Office to convert the Property to another commercial use.

17. Plaintiff sought property that was zoned to permit a place of worship and would allow for the establishment of their mosque and required parking spaces.

18. The Center seeks to establish its mosque facility at the Property as a single building, consisting of a prayer hall and accessory spaces that are customary and incidental to the

religious function of a mosque. This facility would accommodate the religious needs of the Center, as described above.

19. The proposed prayer hall would accommodate over 200 congregants.

20. The proposed prayer hall will feature separate entrances for men and women, and adequate areas for Congregants to perform wudu.

21. The proposed prayer hall requires no change to the site plan or significant construction since the Property already has a main hall area.

22. The Property is uniquely situated to serve the Plaintiff's religious needs, which include a worship space, classrooms for adult education and youth education and social programming intended to encourage the Center's youth to become observant practicing members of the Muslim community, proud and knowledgeable about their heritage both as Muslims and as Americans.

<u>The Applicable Land Use Regulations and Existing Land Uses</u>

23. The Property is located on Research Parkway in the M-4 zoning district. The surrounding area is mainly comprised of large commercial and industrial buildings and the Four Points by Sheraton hotel.

24. Pursuant to § 213-32(B)(2) of the Meriden Zoning regulations, places of worship are permitted in the M-4 zone, subject to issuance of a special permit by the Planning Commission.

25. Plaintiff's proposed use would not be permitted as of right in any zoning districts within the City of Meriden. The City of Meriden's zoning regulations do not permit the construction or establishment of a house of worship as of right in any zoning district within the City of Meriden. In any zoning district, Plaintiff would be subject to the same

special permit application process through the Planning Commission or a special

exception permit through the Zoning Board of Appeals.

26. A Special Permit application in the case of the M-4 zoning district is subject to, inter alia, the requirements of section § 213-32(B)(2) of Meriden's zoning code.  The regulations state: Any use permitted in the Central Commercial C-1 District, not mentioned in § 213-32B(1) above, "provided that the City Council also approves and that the Planning Commission shall find other uses will not tend to depreciate the value of the property in the neighborhood or be otherwise detrimental or aggravating to the neighborhood or its residents or alter the neighborhood's essential characteristics."

27. The Meriden zoning regulations set forth that the Commission may deny a Special Permit application for the M-4 zone if: (1) the use will not tend to depreciate the value of the property in the neighborhood; or (2) otherwise be detrimental or aggravating to the neighborhood or its residents or alter the neighborhood's essential characteristics.

28. The standards set forth in § 213-32(B)(2) allow the Defendant Planning Commission to make individualized assessments of all applications for Special permits.  Moreover, the inherently subjective standards of § 213-32(B)(2) give the Defendant Planning Commission broad discretion over any decision on a Special Permit application, enabling it to accept or reject applications on a case-by-case basis according to its own unwritten and ad-hoc standards.

29. The Planning Commission may approve a Special Permit application with conditions.

30. The Center seeks to occupy the first floor and the second floor would be utilized as office space and rented out to tenants and the Mosque would serve as an anchor and serve to

revitalize the office space by providing a steady stream of potential professional service clients.

31. The Center does not have any realistic opportunity to purchase land elsewhere in Meriden in order to construct such an ideally constructed facility, and any such course of action would involve unreasonable delay, uncertainty, and expense.

32. The Center owns no ready alternate properties in Meriden upon which it can convert to a mosque that would serve its purposes.

33. The Center does not have any realistic opportunity to purchase land elsewhere in Meriden in order to convert or construct along the lines of its proposed application, and any such course of action would involve unreasonable delay, uncertainty, and expense due to the Zoning Regulations promulgated by the Planning Commission itself and the City of Meriden.

34. If the Center were to purchase a new piece of land, it would have to incur numerous expenses, such as those already incurred in relation to its current application, due to the individualized nature of special permit review. Since the outcome of such a hypothetical special permit review process is uncertain, the Center could easily be forced to incur these expenses repeatedly. It would involve unreasonable expense for the Center to purchase an alternate property for its proposed mosque.

35. If the Center attempted to purchase new land and apply to build a mosque elsewhere, this cause of action would result in considerable and unreasonable delay. The special permit application process itself is quite lengthy, as can be seen from The Center's experience to-date.

Application to Use the Property as a Place of Worship and the Planning Commission's Denial

36. On or about January 27, 2019 the Plaintiff filed its application for a Special Permit to establish its mosque.

37. Prior to the filing of the Special Permit application, the City Planner and the Department of Public Works reviewed the application for compliance with zoning regulations and impact on traffic.

38. No traffic study was required by the City of Meriden because a determination was made that the Center would primarily conduct religious activities on the weekend and because the traffic statement indicated a lighter use that the existing use.

39. The Defendant Planning Commission held the first public hearing with respect to Plaintiff's application to convert Property to a place of worship on February 13, 2019.

40. At the February 13, 2019 hearing, the Planning Commission raised no objections to the site plan, traffic, parking requirements or compliance with zoning regulations for the Plaintiff's application.

41. At the February 13, 2019 hearing, the initial feedback from zoning commissioners was positive as the application would result in the vacant Property being utilized and generating economic activity from the second-floor rentals.

42. Most of the comments from the public were positive in that the Center would generate more economic activity and revitalize the depressed neighborhood surrounding the Property, with the exception of one comment regarding tax implications.

43. After the Planning Commission closed the hearing to the applicant and to the public, the Chairman of the Planning Commission, Enrico Buccilli, addressed the commission from prepared remarks to state that the mosque use should be denied since it was not congruent with surrounding lane use since it would not generate tax revenue.

44. After Chairman Buccilli addressed the commission, the other commissioners appeared to change their positions to now oppose the Plaintiff's application.

45. After Chairman Buccilli addressed the commission, the Plaintiff and the members of the public were denied the opportunity to address the unsupported claims of the Planning Commission.

46. The Planning Commission closed the February 13, 2019 public hearing and forwarded the Plaintiff's application to City Council for approval pursuant to §213-32 B(2)(a) as a permitted use subject to approval.

47. Upon information and belief, after the Planning Commission closed the February 13, 2019 public hearing to forward to City Council, the Planning Commission determined behind closed doors that they intended to deny the Plaintiff's application.

48. Upon information and belief, after the Planning Commission closed the February 13, 2019 public hearing to forward to City Council, the Planning Commission informed the Plaintiff that the application would first need to be approved by the Economic Development Department, then City Council and then the Planning Commission.

49. Upon information and belief, the Planning Commission then consulted with Corporation Counsel or the City Attorney to determine how to limit the City of Meriden's legal liability.

50. Upon information and belief, the Planning Commission took back the Plaintiff's application from City Council in order to prevent the public from making anti-Muslim and Islamophobic remarks which could result in liability for the City of Meriden since the Defendants had already decided to deny the Plaintiff's application.

51. Upon information and belief, the Planning Commission added the Plaintiff's application to the March 13, 2019 meeting agenda in order to put the denial on the record.

52. On March 13, 2019, the Planning Commission held a second meeting on the Plaintiff's application, but denied the Plaintiff the opportunity to present or address questions or to take comments from the owner of the Property or the public.

53. At the meeting on March 13, 2019, the Defendant Planning Commission's commissioners expressed confusion as to whether a place of worship was permitted as of right in any zoning districts in Meriden, but the Plaintiff, through counsel, was denied the opportunity to correct their confusion.

54. At a meeting on March 13, 2019, the Defendant Planning Commission voted to deny the Plaintiff's Special Permit application by a vote of five in favor of denial and no votes opposed.

55. On March 27, 2019, the Plaintiff received notice from the Planning Commission that its application for a Special Permit had been denied.  The notice was dated March 20, 2019.

56. The Planning Commission listed three reasons for the denial of Plaintiff's application.

57. The first stated reason for denial of the Special Permit application is that "Primary purpose of M-4 is for industrial, office, and commercial;…"

58. The second stated reason for denial of the Special Permit application is that "The proposed use does not meet the special exception criteria because it is not congruent with the surrounding land uses and it does not augment the primary use of land;…"

59. The third stated reason for denial of the Special Permit application is that "Not in line with the POCD because it reduces commercial and industrial spaces."

Discrimination Against the Center

60. The three stated reasons for denial are essentially identical to each other in meaning.

61. The purpose of the zoning district, congruency with surrounding land uses and the POCD are not proper bases for consideration of a Special Permit application.

62. The stated reasons are arbitrary and capricious, as the Center had described in great detail how the proposed use would support property values and augment the neighborhood. The Planning Commission created a reason for denial that no place of worship could surmount, that the place of worship should be for industrial or commercial purposes.

63. The stated reasons are therefore in bad faith, and evidence the discriminatory intent of the Commission, which utilized bases not allowed in the Meriden zoning regulations, in order to prevent the establishment of the mosque.

64. There are no criteria in the Meriden zoning code prohibiting places of worship that are not industrial or commercial.

65. The Meriden Planning Commission's denial prevents the construction or establishment of a place of worship in all industrial and commercial zones.

66. Under Connecticut law, "[t]he zoning commission has no discretion to deny the special exception if the regulations and statutes are satisfied." *Felsman v. Zoning Comm'n of City of Bridgeport*, 31 Conn. App. 674 (1993).

67. Upon information and belief, the Defendant Planning Commission has never denied a place of worship Special Permit application on the basis that the place of worship was not industrial or commercial.

68. Upon information and belief, the Defendant Planning Commission has never determined that a place of worship "does not augment the primary use of land;"

69. The stated reasons of denial are pretextual and made in bad faith to target the Center and prevent the establishment of the mosque, and were therefore discriminatory.

70. Section 213-77 of the zoning regulations states: "The districts established by this chapter or the boundaries thereof may be changed, altered or amended and any property within the City may be rezoned, reclassified or established whenever the public necessity, convenience or general welfare requires the same by the procedure set forth in this section." The Planning Commission has not done so with respect to the ad hoc criteria it has only applied against the Center.

71. The standards for a Special Permit, as interpreted by the Planning Commission, unreasonably provide the Planning Commission with unbridled discretion to deny any application for a place of worship within commercial or industrial zones and anywhere within the jurisdiction of the City of Meriden.

72. The standards for a Special Permit, as interpreted by the Planning Commission, unreasonably provide the Planning Commission with unbridled discretion to deny any application for a place of worship within the jurisdiction of the City of Meriden.

73. Upon information and belief, the Defendants have treated the Center on less than equal terms in their application of land use regulations, as compared to nonreligious assemblies and institutions in the City of Meriden.

74. Upon information and belief, some nonreligious institutions or assemblies that have applied for special permits have had their applications approved without being subject to multiple public hearings in advance of the Planning Commission's decision.

75. Upon information and belief, some nonreligious institutions or assemblies that have applied for special permits have not had the procedure for City Council consideration

changed so the denial from the Planning Commission would be issued prior to a City Council public hearing.

76. Upon information and belief, some nonreligious institutions and assemblies that have applied for special permits have had their applications approved despite the fact that their uses were not congruent with the surrounding land uses and did not augment the primary use of land.

77. Upon information and belief, some nonreligious institutions or assemblies that have applied for special permits have had those permits approved despite the fact that their use would have a greater impact on the preexisting uses and structures that were permitted as of right in the surrounding neighborhoods than Plaintiff's proposed use would have on the preexisting uses and structures permitted as of right in the neighborhood surrounding the Property.

78. Upon information and belief, some nonreligious institutions or assemblies that have applied for special permits have had those permits approved despite the fact that the proposed uses were in greater disharmony with the general purpose and intent of the Meriden Zoning Regulations than Plaintiff's proposed use is.

79. The Defendants, acutely aware of opposition from certain Meriden residents to the establishment of a Mosque based on Islamophobia and the recent rise of xenophobia against Islam and Muslims, sought to keep public comments and a full City Council hearing off the record.

80. The Planning Commission's actions in this case display departure from the normal Special Permit application review.  There is evident that factors that usually lead to approval by the Planning Commission were discounted or disregarded in this case,

leading to the denial.  The administrative history of the review of Plaintiff's Application evidences irregularities in the review of the Application.  Further, the record of specific prepared opposition and influence of the Chairman Enrico Buccilli made after the Plaintiff could comment and the record of the Planning Commission's efforts to guard the decision from public view and comment shows that the Planning Commission's decision was made in the context of strong, discriminatory opposition to a favorable disposition of the Application.

81. The City of Meriden's refusal to allow the Center to establish its religious facility severely impedes and prevents the Plaintiff's exercise of its religion.  The City, through the actions of its Planning Commission, has rendered the Mosque's religious exercise effectively impracticable.

82. The establishment of the Omar Islamic Center mosque and a level of professional offices, at a total size of over 30,000 square feet, would affect interstate commerce.  The mosque's effect on interstate commerce would result from, amongst other things, fundraising activities, renovation construction, building materials for the renovation, landscaping, interstate communication, providing a place of worship for families of congregants visiting from other states, religious education to congregants in preparation for their embarkation on the hajj, daily operations, part-time and full time employees, the purchase of goods and services relating to the mosque's ongoing operations and maintenance, the hosting of religious leaders and the use of interstate highways for the transportation of period and materials.

83. The Defendants' actions described above all took place under color of state law.

84. The harm to the Center caused by the Defendants' laws and actions, which prevent the Center from building a mosque to accommodate its religious needs, is immediate and severe.

85. Plaintiff has no adequate remedy at law for the harm and damage caused by Defendants' wrongful laws and actions

## COUNT I

### Violation of Religious Land Use and Institutionalized Persons Act of 2000 – "Substantial Burdens" 42 U.S.C. § 2000cc(a)

86. Paragraphs 1 through 85 are incorporated by reference as if set forth fully herein.

87. Defendants have deprived and continue to deprive the Center of its right to the free exercise of religion, as secured by RLUIPA, by imposing and implementing land use regulations in a manner that places substantial burden on the Center's religious exercise without using the least restrictive means of achieving a compelling governmental interest.

## COUNT II

### Violation of Religious Land Use and Institutionalized Persons Act of 2000 – "Nondiscrimination" 42 U.S.C. § 2000cc(b)(2)

88. Paragraphs 1 through 85 are incorporated by reference as if set forth fully herein.

89. Defendants have deprived and continue to deprive the Center of its right to the free exercise of religion, as secured by RLUIPA, by imposing and implementing land use regulations in a manner that discriminates against the Center on the basis of religion and religious denomination.

## COUNT III

### Violation of Religious Land Use and Institutionalized
### Persons Act of 2000 – "Exclusion and Limits": Unreasonable Limitation
### 42 U.S.C. § 2000cc(b)(3)(B)

90. Paragraphs 1 through 85 are incorporated by reference as if set forth fully herein.

91. Defendants have deprived and continue to deprive the Center of its right to the free exercise of religion, as secured by RLUIPA, by imposing and implementing land use regulations in a manner that unreasonably limits religious assemblies, institutions, and structures within their jurisdiction.

## COUNT IV

### Violation of Religious Land Use and Institutionalized
### Persons Act of 2000 — "Equal terms"
### 42  U.S.C. § 2000cc(b)(1)

92. Paragraphs 1 through 85 are incorporated by reference as if set forth fully herein.

93. Defendants have deprived and continue to deprive the Center of its right to the free exercise of religion, as secured by RLUIPA, by treating the Center on terms that are less than equal to those used in evaluating the Special Permit applications of nonreligious institutions or assemblies.

## COUNT V

### United States Constitution
### 42 U.S.C. § 1983: First Amendment
### Prior Restraint

94. Paragraphs 1 through 85 are incorporated by reference as if fully set forth herein.

95. The standards set forth in the City of Meriden zoning regulations governing Special Permit applications for places of worship, and the standards applied by the Planning Commission in reviewing and denying the Center's Special Permit do not provide a person of ordinary intelligence a reasonable opportunity to understand whether such land uses are permitted or prohibited and, as such, constitutes an unconstitutional prior restraint on Plaintiff's protected religious exercise and expression under the First Amendment.  Such standards unconstitutionally afford the Planning Commission unbridled discretion in its review of a Special Permit application for a place of worship.

## COUNT VI

**United States Constitution**
**42 U.S.C. § 1983: First Amendment**
**Free Exercise of Religion**

96. Paragraphs 1 through 85 are incorporated by reference as if set forth fully herein.

97. Defendants have deprived and continue to deprive the Center of its right to free exercise of religion, as secured by the First Amendment to the United States Constitution and made applicable to the States by the Fourteenth Amendment, by substantially burdening the Center's religious exercise without using the least restrictive means of achieving a compelling governmental interest, by discriminating against the Center on the basis of religion in a manner that is not the least restrictive means of achieving a compelling governmental interest, and by burdening the Center's religious exercise through the implementation of a system of individualized exemptions from local land use laws and refusing to grant the Center such an exemption in a manner that is not the least restrictive means of achieving a compelling governmental interest.

98. Alternatively, Defendants have deprived and continue to deprive the Center of its right to free exercise of religion, as secured by the First Amendment to the United States Constitution and made applicable to the States by the Fourteenth Amendment, by burdening the Center's religious exercise in a manner that is not rationally related to a legitimate governmental interest.

**COUNT VII**

**United States Constitution**
**42 U.S.C. § 1983: Fourteenth Amendment**
**Equal Protection**

99. Paragraphs 1 through 85 are incorporated by reference as if set forth fully herein.

100.      Defendants have deprived and continue to deprive the Center of its right to equal protection of the laws, as secured by the Fourteenth Amendment to the United States Constitution, by discriminating against Plaintiff in the imposition and implementation of their land use regulations.

**COUNT VIII**

**Connecticut General Statutes**
**Section 8-8(i)**

101.      Paragraphs 1 through 85 are incorporated by reference as if set forth fully herein.

102.      The Defendant Planning Commission's action in denying the Center's application was illegal, unlawful, arbitrary, capricious, contrary to the substantial evidence of the record and in abuse of the powers vested in the Defendant Planning Commission under

the statutes of the State of Connecticut and the Regulations for one or more of the

following reasons:

    a.  The Planning Commission denied the application despite the fact that the application proposed utilization of the Property for a use explicitly permitted in the zone in accordance with the provisions of Section 213-32(B)(2) of the Regulations;

    b.  The Planning Commission denied the application despite the fact that, as submitted, the proposal complied with all the substantive requirements of the Regulations based on the existing site plan;

    c.  The Planning Commission found that only industrial, office, and commercial uses would be congruent with the surrounding land uses and augment the primary use of land, despite the facts that the propose use complied with the Regulations;

    d.  In denying the application without proper authority under the Regulations, the Planning Commission relied upon considerations which do not provide a valid basis as a matter of law for so doing since the application complied with all substantive requirements of the Regulations;

    e.  In so denying the application, the Planning Commission sought to impose standards with regard to the use of the Property as a place of worship that are not contained or authorized in the Regulations nor consistent with past actions of the Defendant City with regard to the approval of other churches and places of worship within the City of Meriden;

    f.  In so denying the application, the Planning Commission based its decision on speculation, inferences and illegal considerations of matters not legally relevant to its review of the application or the enforcement of the applicable provisions of the Regulations;

    g.  The Planning Commission's decision to deny the Plaintiff's application is not supported by the provisions of its own Regulations;

    h.  The Planning Commission's denial of the application is not supported by substantial evidence in the record.

103.      The Plaintiff, as the proposed owner of the Property, the donee of the Property

and the Applicant to the Planning Commission, is aggrieved as a result of the

Defendant's actions with regard to the denial of its application.

104.     Attached hereto as Exhibit A and B are copies of the Citation and Recognizance

with Surety served on the Defendant Meriden Planning Commission on April 2, 2019 in

accordance with the provisions of Connecticut General Statutes Section 8-8.

## COUNT IX

### Connecticut Religious Freedom Act
### C.G.S.A. § 52-571b

105.     Paragraphs 1 through 85 are incorporated by reference as if set forth fully herein.

106.     Defendants have deprived and continue to deprive the Center  of its right to the

free exercise of religion, as secured by the C.G.S.A. § 52-571b, by imposing and

implementing a land use regulation that discriminates against the Center on the basis of

its religious beliefs and burdens the Center's religious exercise in a manner that neither

furthers a compelling governmental interest nor uses the least restrictive means to achieve

any interest.

## PRAYER FOR RELIEF

WHEREFORE, the Center respectfully requests that this Court grant the following relief:

1. A declaration that the denial of the Omar Center's Special Permit application is void, invalid and unconstitutional on the ground that it violates the Free Exercise and Free Speech Clauses of the First Amendment to the United States Constitution, the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution, the Religious Land Use and Institutionalized Persons Act, and the Connecticut Religious Freedom Act;

2. A declaration that the standards set forth in the City of Meriden's zoning regulations governing Special Permit applications for places of worship, and the standards applied by the Planning Commission in reviewing and denying the Center's Special Permit are an unconstitutional prior restraint on protected expression and religious exercise under the First Amendment;

3. An order sustaining Plaintiff's Planning Commission appeal, and finding the Meriden Zoning Commission's action in denying Plaintiff's Special Permit application to be unlawful under the Connecticut General Statutes;

4.  An order directing City of Meriden Planning Commission to reverse its March 13, 2019 determination and grant the Center the Special Permit necessary to establish its house of worship on the Property as applied for in its application;

5.  An order enjoining the Defendants, their officers, employees, agents, successors and all others acting in concert with them from applying their laws in a manner that violates the Free Exercise and Free Speech Clauses of the First Amendment to the United States Constitution, the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution, the Religious Land Use and Institutionalized Persons Act, and the Connecticut Religious Freedom Act, or undertaking any and all action in furtherance of these discriminatory and disparate acts, and specifically enjoining the Defendants to approve all plans and applications submitted by the Center in furtherance of its development of the Property without delay or condition;

6.  An award of compensatory damages against Defendants in favor of the Center as the Court deems just for the loss of the Center's rights under the First and Fourteenth Amendments to the United States Constitution, the Religious Land Use and Institutionalized Persons Act, and the Connecticut Religious Freedom Act incurred by the Center and caused by the Defendants' laws and actions;

7.  An award to the Center of full costs and attorneys' fees arising out of Defendants' actions and land use decisions and out of this litigation; and

8.  Such other and further relief as this Court may deem just and appropriate.


Respectfully submitted this 2nd day of April, 2019,

BY

REFAI M. AREFIN
Bar No. ct28565
1224 Mill Street
Building B
East Berlin, CT 06023
(860) 856-6889